In re Estate of Case: Butler, Appellant, *v.* Case, Admr., et al., Appellees.

(No. 4888—Decided March 25, 1953.)

*Mr. Thomas W. Connor,* for appellant.
*Mr. John C. Fontana* and *Mr. A. Glenn McClelland,* for appellees.

*Per Curiam.* This is an appeal from an order of the Probate Court overruling exceptions of the exceptor, appellant herein, to certain items in the inventory of the appellee-administrator. The administrator, in schedule "A" of the inventory, listed two Cadillac

automobiles, one a 1949 two-door convertible coupe, and the other a 1941 four-door touring sedan.

The exceptions are based upon the claim of appellant that she was the owner of these automobiles by reason of certificates of title to both wherein she was the transferee. Upon the original hearing of the exceptions, when it developed that the certificates of title to the automobiles were in the name of the appellant, the court refused to consider any further testimony and ordered the inventory amended, striking the two cars therefrom, and instructed the administrator to turn the cars and keys over to the appellant. The court based its ruling on Section 6290-4, General Code. The administrator then filed a motion for new trial which was sustained and the court, by agreement of counsel, considered certain testimony which had been offered but rejected on the first hearing and a stipulation of the parties and overruled the exceptions of appellant.

We have the opinion of the trial judge and find that he discarded the possibility of a gift *causa mortis* to the exceptor, as to which he was clearly correct, or a gift *inter vivos* and held that there was a resulting trust in favor of the decedent in the two automobiles.

The facts developed are that the administrator's decedent had for many years before the purchase of the automobiles here involved, and even before the enactment of Section 6290-4, General Code, bought automobiles which he had not carried in his own name but in the name of one Harold Brown who, during a period from 1931 until 1947 or 1948, had sold decedent a 1937 Ford, a 1939 Nash, a 1941 Buick, and a 1947 Chrysler. Presumably this testimony was offered to show a pattern whereby decedent maintained title in the name of another to automobiles which he owned. It is of little or no assistance as to the title of the Cadillacs here under consideration. In Brown's own words, the

reason for this procedure was that, "He [Case] did not have the money to pay for the car and he just left the car in my name and he paid it out as he went along. It was mine as long as he didn't pay me." It is evident that the arrangement was set up to assure Brown payment for the automobiles which he had sold to decedent.

We now come to the question presented by this appeal, namely, the correctness of the judgment that the equitable title to the two Cadillacs was at the time of the death of decedent in his name.

On April 12, 1951, a certificate of title to a 1941 four-door touring sedan was made to Barbara R. Butler by the Columbus Motor Car Company. On July 18, 1949, a certificate of title was issued to Barbara R. Butler for a 1949 Cadillac two-door convertible coupe from the Columbus Motor Car Company. Upon these certificates, licenses were issued in the name of the certificate holder. Upon the second certificate there is a notation of a lien in the form of a chattel mortgage securing the sum of $2,100, payable to the Market Exchange Bank Company. The record discloses that this loan was made to pay a part of the purchase price of the Cadillac convertible and that the note was signed jointly by decedent and Mrs. Butler. The certificates of title were at all times until his death in the possession of the decedent, and the cars were used exclusively by him with the exception of a few weeks as to each car during which time Mrs. Butler used them by decedent's permission. It does not appear that there was any understanding between the decedent and appellant that she should hold the automobiles in trust for her father or that she should transfer them to him upon request. There is no evidence of mistake in the issuance of the certificates, and there is no suggestion of fraudulent conduct on the part of the appellant.

It was testified to by both Mrs. Butler and her husband that at about the time of the purchase of the last Cadillac, decedent said to Mrs. Butler, his daughter, that the cars were in her name, so that when and if he died she would get them free and clear of any taxes. Her husband said that Case stated, "Well, no matter whatever happens, Barbara, at least you will always have the cars."[1]

In the situation thus developed, was the order of the court supported upon any proper application of the controlling law?

Section 6290-4, General Code, reads:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidence by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

This is a drastic statute, but it is plain and all-inclusive in meaning. It rules out almost every conceivable claim except fraud, which might be asserted against the holder of the certificate. It holds the title shall not be acquired until the certificate of title shall be issued to the motor vehicle and that no court in any case at law or in *equity* shall recognize the title or in-

terest of any person in or to any motor vehicle sold, disposed of or mortgaged unless such title is evidenced by a certificate of title duly issued in accordance with the provisions of this chapter.

The rights of decedent's administrator can rise no higher than could the rights of the decedent had he lived. Under the statute, as construed by the courts, we find no support for the claim that had decedent undertaken to assert title to the automobiles against his daughter he would have been successful. He was presumed to know the law and the provisions of Section 6290-4, General Code. Of course, there was no necessity for actual delivery of the automobile to constitute a gift. The filing of the certificates of title and the issuance of licenses thereunder would be a sufficient symbolic delivery. But the burden here is not upon the holder of the certificate to show that she held title to the cars by gift. The burden is upon the administrator to prove that such certificate holder has no title to the cars, and that title is in the administrator.

While the trial judge was not bound to accept the testimony of appellant and her husband, it is consistent with the theory that, in taking title to the cars in his daughter's name, decedent acted with a purpose, namely, to avoid any possibility of payment of taxes at his death and to assure that if he died she would own these cars. This attitude is consistent only with the theory that she at all times owned them. Then, too, although she paid nothing on the cars, she was jointly obligated with her father to pay the purchase money loan from the bank on the Cadillac convertible.

Our Supreme Court in the last two cases in which Section 6290-4, General Code, was under consideration announced in no uncertain language that:

"Under the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to

any motor vehicle, without the production of a certificate of title * * * duly issued in accordance with the Certificate of Title Law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment." *Mielke* v. *Leeberson,* 150 Ohio St., 528, 83 N. E. (2d), 209, 7 A. L. R. (2d), 1342.

To like effect see *Kelley Kar Co.* v. *Finkler,* 155 Ohio St., 541, 99 N. E. (2d), 665.

As we have said, there is no showing that the purchaser of the automobiles did not intend to transfer title to his daughter. In this situation it is held that Section 6290-4, General Code, must be given full effect in favor of the holder of the certificate of title duly issued. *Beyer* v. *Miller,* 90 Ohio App., 66, 103 N. E. (2d), 588; *Standard Materials, Inc.,* v. *Massachusetts Fire Ins. Co.,* 42 Ohio Opinions, 447, 94 N. E. (2d), 809; *Davis* v. *Clelland,* 45 Ohio Opinions, 89, 92 N. E. (2d), 827.

The case of *Hiple, Admr.,* v. *Skolmutch,* 88 Ohio App., 529, 100 N. E. (2d), 642, applied the essentials of a valid delivery of a gift *inter vivos,* namely, complete parting with possession, dominion and control of the corpus of the gift with the present vesting of the donee with possession, dominion and control thereof. But there, the plaintiff seeking to establish the gift did not have the certificate of title to the car which he claimed and did not have the benefit of the terms of the statute.

We cannot hold, in the face of the statute, that title may not pass to the transferee when the certificates are made in her name, licenses issued in her name, insurance on the cars issued in her name and collection of loss under such policy by her.

The case of *Douglas* v. *Hubbard,* 91 Ohio App., 200, 107 N. E. (2d), 884, holds that Section 6290-4, General

Code, does not preclude the establishment of a valid purchase money resulting trust, in which a motor vehicle constitutes the trust *res*. The second paragraph of the syllabus is significant:

"When A. pays the purchase money for a motor vehicle and the certificate of title is issued to B., who is *legally a stranger to A.* and who makes no express promise, a typical instance of a resulting trust is presented, and such legal relationship may be established in respect to a motor vehicle, the same as it may be established in respect to any other kind of property." (Emphasis ours.)

Conceding that the resulting trust theory may be applied in the face of the statute and that equity will recognize no title except that in the certificate holder, the cited case does not support the finding of a resulting trust here. In that case, the transferee was a stranger to the transferor. Here the transferee was the daughter of the transferor.

In *Roberts* v. *Remy,* 56 Ohio St., 249, 46 N. E., 1066, the rule is recognized that where the owner of personal property transfers it without consideration, presumably he intends to make a gift and not to create a trust. In this situation there would be no place for the resulting trust theory and, also, a conveyance to a child by a parent is presumed to be a gift.

In 40 Ohio Jurisprudence, 279, Section 100, it is said:

"It is a rule of almost equal universality of application that the presumption which gives rise to a resulting trust, as discussed in the last section, does not obtain where the payor of the purchase price takes title to the property in the name of a near relative. On the contrary, in this fact situation another presumption is entertained, viz., that of gift or advancement. Thus, in the following situations there is a presumption of a gift, and not of a resulting trust * * * where a father or mother takes title in the name of a child * * *."

See, also, *Paddock* v. *Adams*, 56 Ohio St., 242, 246, 46 N. E., 1068.

It has been held that possession of the property by the payor does not rebut the presumption of a gift. See *Vancant* v. *Davies*, 6 Ohio St., 52, where the possession was retained by the father. Indulging the presumption that the title to these automobiles taken by the father in the name of his daughter was intended to be a gift is not overcome by the evidence in this case. If the resulting trust theory has application, the appellee has not made the requisite proof to establish a resulting trust in favor of his decedent.

We hold against the appellant as to assignments of error Nos. 1 and 2 relating to the admission of evidence, and find assignments Nos. 3, 4 and 5 well made. The court erred in entering the judgment, as it was contrary to law and against the manifest weight of the evidence, and in sustaining the motion for new trial and overruling the exceptions to the inventory.

The judgment is reversed and the cause remanded with instructions to sustain the exceptions of appellant to the inventory, to strike therefrom the two Cadillac cars, and to instruct the administrator to turn the cars and keys over to the appellant.

*Judgment accordingly.*

WISEMAN, P. J., MILLER and HORNBECK, JJ., concur.